**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
NORTHERN DIVISION
AT ASHLAND**

**CIVIL ACTION NO. 22-73-DLB-EBA**

**NORTHCUTT & SON HOME FOR FUNERALS, INC.,**           **PLAINTIFF**

**v.**           **MEMORANDUM OPINION AND ORDER**

**U.S. BANK NATIONAL ASSOCIATION,**           **DEFENDANT**

\*\*\* \*\*\* \*\*\* \*\*\*

This matter is before the Court on Defendant United States Bank National Association ("U.S. Bank")'s Motion for Summary Judgment. (Doc. # 14). Plaintiff Northcutt & Son Home for Funerals, Incorporated ("Northcutt") filed its Response (Doc. # 18), Defendant filed its Reply (Doc. # 19), and this matter is now ripe for review. For the reasons set forth herein, Defendant's Motion for Summary Judgment (Doc. # 14) will be **granted**.

**I.    FACTUAL AND PROCEDURAL BACKGROUND**

This action arises out of a banking relationship between Northcutt and U.S. Bank. (Doc. # 14-1, at 2).[1] Northcutt is a family-owned corporation which operates as a funeral home in Morehead, Kentucky (Doc. #1-1 at 1), and had a checking account with U.S. Bank in 2021. (Doc. # 14-1 at 2). U.S. Bank is a bank organized under the laws of Minnesota with offices in Kentucky. (Doc. # 1-1 at 1).

---

[1]    The parties largely agree on the basic facts of this case. For brevity and clarity, the Court will primarily refer to the Motion for Summary Judgement (Doc. # 14) and the Complaint (Doc. #1-1) for the basic facts, except where necessary to elaborate on disagreements.

1

From September 24, 2021, to December 31, 2021, 47 transactions took place which unfortunately caused $152,500.00 to be transferred out of Northcutt's U.S. Bank's checking account. (Doc. # 14-1 at 26-49). The funds were transferred via wire transfer to an account at MetaBank, an online bank. (Doc. #18-4 at 5). The parties appear to agree that this transfer was the result of a fraud on Northcutt by unknown third parties. (Doc. # 19 at 7). The first transfer occurred on September 24 after a brief hold was placed on Northcutt's account by U.S. Bank. (Doc. #14-1 at 49). The hold was lifted after a U.S. Bank employee "confirmed" that the transfer was valid by speaking over the phone to a man impersonating John Northcutt. (Doc. # 18 at 6 and 10). After that initial hold, the next 46 transfers were made from Northcutt's checking account to MetaBank without issue until the fraud was finally discovered and Northcutt's account was locked. (*Id.*). Northcutt learned of the unauthorized transfers in January 2021 and disputed the transactions by submitting claim forms to U.S. Bank. (Doc. # 1-1 at 2). All claims submitted by Northcutt to U.S. Bank were rejected. (*Id.*).

Northcutt filed suit against U.S. Bank on August 24, 2022, in Rowan Circuit Court asserting two claims against U.S. Bank, conversion under KRS § 355.3-420 and "other applicable law," and common law negligence. (Doc. # 1-1 at 3 - 4). U.S. Bank removed this action to this Court on September 9, 2022, on the basis of diversity jurisdiction. (Doc. # 1).

II.  DISCUSSION

    A.  **Standard of Review**

A motion for summary judgment should be granted when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment

2

as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute as to a material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Thus, no genuine dispute exists where no reasonable jury could return a verdict for the nonmoving party. *See Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 349 (6th Cir. 1998). The moving party bears the burden of showing the absence of a genuine issue of material fact. *Sigler v. Am. Honda Motor Co.*, 532 F.3d 469, 483 (6th Cir. 2008).

Once the movant has satisfied its burden, the non-moving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). It must produce evidence showing that a genuine factual issue remains. *Plant v. Morton Int'l, Inc.*, 212 F.3d 929, 934 (6th Cir. 2000). If, after reviewing the record as a whole, a rational fact finder could not find for the non-moving party, summary judgment should be granted. *Ercegovich*, 154 F.3d at 349.

Moreover, the trial court is not required to "search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Rather, the "nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). Lastly, the Court must draw all reasonable inferences in favor of the non-moving party. *Matsushita*, 475 U.S. at 587.

3

**B. Analysis**

*1. Northcutt's Common Law Claims are Preempted*

In its Complaint, Northcutt asserts a claim for common law negligence and a claim for conversion "under KRS 355.3-420 and other applicable law." (Doc. # 1-1 at ¶ ¶ 20 and 22-25).[2] In its Motion for Summary Judgment, U.S. Bank argues that the Kentucky Uniform Commercial Code ("UCC") preempts all of Northcutt's common law claims. (Doc. # 14-1 at 4). For the UCC to preempt the common law, an "explicit statement to that effect each time it occurs" is not required. *Mark D. Dean, P.S.C. v. Commonwealth Bank & Trust Co.*, 434 S.W.3d 489 (Ky. 2014). Rather "the UCC should also be understood to intend the displacement of the common law whenever both the code and the common law would provide a means of recovery for the same loss." *Id.* (quoting *Clancy Sys. Int'l Inc. v. Salazar*, 177 P.3d 1235, 1237 (Colo. 2008)).

Here, it is undisputed that the financial loss sustained by Northcutt resulted from dozens of fraudulent wire transfers. (Doc. # 14-1 at 26-49). With the Kentucky Supreme Court's preemption analysis in mind, the question then becomes whether the UCC provides a remedy for bank customers who have suffered a loss resulting from wire transfers and are unable to recover those funds. As U.S. Bank points out in its Response, the answer to that question is yes. (Doc. #19 at 5). Chief Judge Reeves recently determined that KRS § 355.4A-402 provides a remedy for bank customers who are unable to recover funds transferred to another bank via a wire transfer. *Cosmopolitan Title Agency, LLC v. JP Morgan Chase Bank, N.A.*, 649 F. Supp. 459, 464 (E.D. Ky. 2023).

---

[2] To the extent Northcutt asserts that its claim for conversion arises out of the common law, it will be addressed in this section. Northcutt's statutory conversion claim will be addressed below.

4

Because there is a statutory remedy for bank customers in Northcutt's position, the UCC preempts the common law in this area.

Northcutt attempts to avoid this obstacle by asserting that tortious conduct which occurs after a wire transfer is not covered by the UCC. (Doc. # 18 at 10) (*citing Pirata P.S.C. v. Bank of America, N.A.*, 3:22-CV-627-CHB, 2024 WL 25088, at *5 (W.D. Ky. Jan. 2, 2024)). While this may be an accurate statement of law, Northcutt fails to allege any tortious conduct which occurred outside or after the transfer process. Northcutt does allege that U.S. Bank was negligent after the transfers by "failing to exercise ordinary care in its monitoring and investigation of the [transfers] *after* the transfers were completed." (Doc. # 18 at 10) (emphasis in response). However, Northcutt does not specify in what way the post-transfer monitoring lacked due care. Northcutt has failed to demonstrate that any tortious conduct occurred which fell outside of the "funds transfer process." *Cosmopolitan Title Agency, LLC*, 649 F. Supp. 3d at 463-64. The lack of specifically alleged tortious conduct distinguishes the case at bar from *Pirata*, where the defendant-bank was allegedly negligent after the funds transfer process was complete. *Pirata P.S.C.*, 2024 WL 25088, at *4-5. The *Pirata* court found that where the defendant-bank voluntarily undertook to help the plaintiff recover its transferred funds and allegedly did not exercise reasonable care in doing so, the plaintiff's common law claim was not preempted because it "relate[d] to misconduct that allegedly occurred after the wire transfer." *Id.*

In short, the only conduct alleged to be actionable is conduct which fell within the "funds transfer process." *Cosmopolitan Title Agency, LLC*, 649 F. Supp. 3d at 463-64. Because the UCC provides a remedy for plaintiffs who are unable to recover funds which

5

were transferred via wire transfer, the common law is preempted by the UCC. *Id.* at 464. For that reason, Northcutt's negligence claim and common law conversion claim do not survive U.S. Bank's Motion for Summary Judgment.

### 2. Northcutt's Conversion Claim Under KRS § 355.3-420 does not Survive U.S. Bank's Motion for Summary Judgment

In its Complaint, Northcutt also asserts a claim for Conversion of an Instrument under KRS § 355.3-420.[3] U.S. Bank argues that Summary Judgment should be granted against Northcutt with respect to the statutory conversion claim because Northcutt failed to satisfy its obligations, under both KRS § 355.4-406 and the Deposit Account Agreement (the "Agreement"), to "examine its account statements and notify the bank of any unauthorized transactions involving its account." (Doc. #14-1 at 5-6).[4] Northcutt does not dispute U.S. Bank's contention that Northcutt failed to meet its statutory and contractual obligations. Instead, Northcutt puts forth two arguments for why it is still

---

[3]   It is unclear that this statute applies on these facts. Article 3 of the UCC "applies to negotiable instruments." KRS § 355.3-102(1). Article 3 "does not apply to money" nor does it apply to "payment orders governed by Article 4A of [the UCC]." *Id.* By its terms, KRS § 355.3-420 is a statute that creates a cause of action for the conversion of an "instrument." The Complaint does not allege that any "instrument" was converted. Instead, the Complaint alleges that U.S. Bank interfered with the money in Northcutt's checking account and that interference constituted a conversion. (Doc. # 1-1 at ¶ 20). The means by which the funds in Northcutt's checking account were allegedly interfered with was a wire transfer. (*Id.* at ¶ 5). Wire transfers are governed by Article 4A of the UCC, not Article 3. KRS § 355.4A-102. However, U.S. Bank did not raise this issue in its Motion for Summary Judgement, and the Court will not raise it *sua sponte*.

[4]   It is not clear that the obligations and penalties associated with KRS § 355.4-406 apply on these facts. KRS § 355.4-406 imposes a duty upon bank customers to examine their statements to determine whether any payment "was not authorized because of an alteration of an item or because a purported signature by or on behalf of the customer was not authorized." KRS § 355.4-406(3). This section appears to be concerned with "items." *Id.* The term "item" "does not include a payment order governed by Article 4A of this chapter ...." KRS § 355.4-04(1)(i). However, whether this statute applies is immaterial because the Agreement describes in detail the rights and duties of both Northcutt and U.S. Bank.

6

entitled to relief. First, Northcutt argues that U.S. Bank is liable to Northcutt because U.S. Bank did not follow its own security procedures. (Doc. # 18 at 9). Second, Northcutt argues that even if Northcutt did fail to notify U.S. bank of the improper fund transfers, the Agreement should be read in such a way that it entitles Northcutt to a partial recovery (*Id.* at 11-12). The Agreement's terms and conditions will be discussed below, followed by the two arguments made by Northcutt for why it is still entitled to relief. As will be shown, neither of Northcutt's arguments are persuasive.

The Agreement imposes a duty on Northcutt to promptly examine its account statement and notify U.S. Bank of any "problems." (Doc. # 14-1 at 77). The Agreement says:

> [Y]ou [Northcutt] agree to promptly examine your statement and report to [U.S. Bank] any problem on or related to your statement within 30 calendar days after we mail the statement (or make the statement available) to you.

(*Id.*). The term "problem" is defined as "any error, alteration, counterfeit check, or unauthorized transaction (including, but not limited to, forged or missing signatures and excluding consumer electronic banking transactions) related to your account." (*Id.*). The Agreement continues:

> You [Northcutt] agree that we [U.S. Bank] will not be responsible for: (1) any problem that you do not report to us in writing within a reasonable time not to exceed 30 calendar days after we mail the statement (or make the statement available to you); (2) subsequent problems or fraudulent items occurring after 30 days of the first occurrence; if you fail to report the problem within 30 days of the first occurrence reported on your statement.

(*Id.*). As the Agreement makes clear, a customer that signs this Agreement has 30 days from the date that their account statement is made available to them to review their

7

statement for unauthorized transactions. If the customer fails to report to U.S. Bank any unauthorized transactions the customer knew or should have known about, then the customer cannot hold U.S. Bank liable for any of those unauthorized transactions, nor can the customer hold U.S. Bank liable for any subsequent fraudulent transactions. In other words, there is a 30-day window to report unauthorized transactions to U.S. Bank, failure to make a report in that window bars any recovery from U.S. Bank.

The first transfer from Northcutt's account to Metabank took place on September 24, 2021. (Doc. # 18 at 2). Northcutt's account statement was made available to them on or around October 3, 2021. (*Id.* at 12).[5] Per the Agreement, Northcutt had 30 days from the date that the account statement was made available to notify U.S. Bank of any unauthorized transactions. (Doc. # 14-1 at 77). Northcutt did not contact U.S. Bank about the unauthorized transfers until January 2022 which is well over 30 days from any possible date in October 2021. (*Id.* at 1). Northcutt's failure to notify U.S. Bank of the unauthorized transactions within the allotted 30 days means that Northcutt cannot recover the transferred funds from U.S. Bank. (*Id.* at 77). It also means that Northcutt cannot recover any of the funds which were transferred after the initial 30-day window closed. (*Id.*).

In its Response, Northcutt argues that U.S. Bank should still be liable to Northcutt because U.S. Bank allegedly did not comply with KRS § 355.4A-202(2) by failing to follow its own security procedures. (Doc. # 18 at 9). This argument is improper. In its Complaint,

---

[5] There is some ambiguity about the precise date on which the account statement was made available to Northcutt. However, the parties appear to agree that the statement was first made available in early October of 2021. (Doc. # 18 at 12; Doc. # 19 at 6). The precise date is immaterial because Northcutt did not provide notice to U.S. Bank of the problems with its account until January 2022. (Doc. # 14-1 at 2).

8

Northcutt asserted claims for common law negligence and conversion as well as statutory conversion under KRS 355.3-420. (*See* Doc. #1-1). Nowhere in the Complaint does Northcutt make any mention of any duty owed by U.S. Bank under KRS § 355.4A-202.[6] Northcutt cannot now, for the first time, assert that U.S. Bank failed to satisfy duties imposed by KRS § 355.4A-202. Therefore, the Agreement's provisions which detail the rights and obligations of both Northcutt and U.S. Bank control over this dispute. The only question remaining is whether the Agreement entitles Northcutt to a partial recovery.

Northcutt's interpretation of the Agreement to allow for a partial recovery is perplexing. In its Response, Northcutt presents the following excerpt from the Agreement:

> *You* [Northcutt] *agree that we* [U.S. Bank] *will not be responsible for*: (1) *any problem* that you do not report to us in writing within a reasonable time not to exceed 30 calendar days *after we mail the statement* (or make the statement available to you).

(Doc. # 18 at 11) (emphasis in response). Northcutt reads this provision to mean that Northcutt only agreed that U.S. Bank "would not be liable for problems with the account that occur prior to when the statement was made available to it." (*Id.*). Northcutt's interpretation of this provision is inconsistent with the plain and unambiguous language of the contract. The quoted language above clearly means that U.S. Bank cannot be held responsible for "problems" which are not reported to U.S. Bank within 30 days from the date the account statement for that period is made available to the account holder.

---

[6] Even if this Court were to take up this argument, the Response does not specify which security procedures were not followed by U.S. Bank. (*See* Doc. # 18). Northcutt alleges that U.S. Bank violated its policies when it lifted the initial hold on Northcutt's account after speaking to a non-native English speaker impersonating John Northcutt. (*Id.* at 8-9). Northcutt also alleges that the impersonator's email address was one that had not been previously used in association with Northcutt's account. (*Id.*). Regardless, Northcutt has failed to bring to the Court's attention any specific U.S. Bank policies which the above conduct allegedly violated.

9

Northcutt is not entitled to any partial recovery from U.S. Bank based on the above language.

In short, the terms of the Agreement clearly gave Northcutt up to 30 days from the date that it had access to its account statement to discover and report any problems with the account (including unauthorized wire transfers). (Doc. # 14-1 at 77). Failure to discover and report problems in that 30-day window cut off Northcutt's right to recover the funds transferred during that statement period from U.S. Bank. (*Id.*). The failure to discover and report problems also cut off Northcutt's right to recover from U.S. bank for all subsequent transfers. (*Id.*). Northcutt has been unable to present any meritorious argument for why its unambiguous Agreement should not govern the rights and obligations of the parties to this dispute. Therefore, summary judgment must be granted in favor of U.S. Bank with respect to Northcutt's statutory conversion claim. Because all of Northcutt's claims have failed, Northcutt's request for an accounting and for punitive damages (Doc. # 1-1 at ¶ 26-30) must also fail.

### III.   CONCLUSION

Thus, for the reasons articulated herein, **IT IS ORDERED** that:

(1)   Defendant's Motion for Summary Judgment (Doc. # 14) is **GRANTED**;

(2)   This matter is **STRICKEN** from the Court's active docket; and

(3)   A **Judgment** in favor of Defendant will be entered contemporaneously herewith.

This 4th day of September, 2024.



Signed By:
*David L. Bunning*
United States District Judge